USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/31/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                            :

CONSTANTINO GONZALEZ-REYES      :

               Petitioner,   :

                            :

        -v-              :          1:20-cv-2639-GHW

                            :

THOMAS DECKER, in his official capacity as  :     __MEMORANDUM OPINION__
Director of the New York Field Office of U.S.  :         __AND ORDER__
Immigrations & Customs Enforcement, CHAD  :
WOLF, in his official capacity as Acting      :
Secretary, U.S. Department of Homeland      :
Security, & CARL E. DUBOIS, in his official  :
capacity as Sheriff of Orange County, New    :
York,                                :

               Respondents. :

                            :

-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      On February 27, 2020, Petitioner Constantino Gonzalez-Reyes was arrested by U.S.

Immigration and Customs Enforcement ("ICE") and taken into custody at the Orange County Jail

in Goshen, New York.  On March 30, 2020, Mr. Gonzalez-Reyes filed a petition for a writ of habeas

corpus, seeking to be released because his medical conditions placed him at high risk of serious

harm from COVID-19.  Respondents voluntarily released Mr. Gonzalez-Reyes shortly after he filed

his habeas petition.  But this was not enough for Mr. Gonzalez-Reyes.  After his release, Mr.

Gonzalez-Reyes filed an amended petition seeking to enjoin Respondents from detaining him

pending the culmination of his removal proceedings, claiming that there is no way that he can be

constitutionally detained as long as COVID-19 is at large in the land.  Respondents moved to

dismiss the petition for lack of subject matter jurisdiction.  Because the issue of whether future

immigration detention at an unknown time, in an unknown place, and under unknown conditions,

will violate Mr. Gonzalez-Reyes' Due Process rights is not yet ripe, Respondents' motion to dismiss is GRANTED without prejudice.

## I.      BACKGROUND

### A.      Immigration Proceedings

Mr. Gonzalez-Reyes is 40 years old.  He has lived in New York City for approximately 20 years.  Am. Pet. for Writ of Habeas Corpus ("Am. Pet."), Dkt. No. 31 ¶ 6.  On February 23, 2020, Mr. Gonzalez-Reyes was arrested for a criminal offense.  He was released on his own recognizance later the same day.  *Id.* ¶ 51, n. 68.  The criminal charge was later dismissed.  *Id.*  But his contact with the criminal justice system seems to have drawn the attention of ICE.  Because on February 27, 2020, he was arrested by ICE at his home in Brooklyn, New York.  *Id.*

ICE detained Mr. Gonzalez-Reyes at the Orange County Jail in Goshen, New York, and "charged him as removable for being in the United States without being admitted or paroled, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i)."  *Id.* ¶¶ 6, 51, n. 68.  ICE began removal proceedings against Mr. Gonzalez-Reyes.  *Id.*

On March 10, 2020, Mr. Gonzalez-Reyes appeared before an immigration judge for a master calendar and bond hearing without the assistance of counsel.  *Id.*  The bond hearing was adjourned to April 16, 2020 to allow Mr. Gonzalez-Reyes to retain counsel.  *Id.*; *see also* Decl. of Deportation Officer Jaime Rodriguez ("Rodriguez Decl."), Dkt. No. 34 ¶ 7.

On March 24, 2020, Mr. Gonzalez-Reyes requested that ICE release him in its discretion due to the COVID-19 pandemic.  Am. Pet. ¶ 56; Rodriguez Decl. ¶ 8.  On March 27, 2020, he provided ICE with specific information about his medical vulnerabilities; he explained to ICE that COVID-19 presented a particular risk to him.  Am. Pet. ¶ 58; Rodriguez Decl. ¶ 8.  Mr. Gonzalez-Reyes suffers from a number of underlying health conditions, which, he asserts, make him particularly vulnerable to COVID-19:  obesity, hypertension, a long history of smoking, and a history of respiratory issues,

including chest pain and shortness of breath.  Am. Pet. ¶ 50.  Presumably because he had not heard an affirmative response from ICE on the 27th, or the day after, on March 29, 2020, Mr. Gonzalez-Reyes submitted his release request to "the Assistant U.S. Attorneys who handle immigration cases in the Southern District of New York." *Id.* ¶ 60.  A representative of the office responded that they would forward his request to ICE.  *Id.* ¶ 61.

### B.    Original Habeas Petition

Mr. Gonzalez-Reyes did not wait for a response.  Instead, the next day, March 30, 2020, Mr. Gonzalez-Reyes filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petition ("Pet." or "Original Petition"), Dkt. No. 4.  The Original Petition argued that the conditions of Mr. Gonzalez-Reyes' detention by ICE in the Orange County Jail violated the Due Process Clause of the United States Constitution.  His claim rested on the conditions at the facility and the lack of medical care provided to him while there.  Mr. Gonzalez-Reyes argued that the conditions of his detention were punitive because of the fact that the facility had inadequate COVID-19 prevention measures in place.  *Id.* ¶¶ 88–89.  Mr. Gonzalez-Reyes also claimed that Respondents acted with deliberate indifference to his urgent medical needs as a person at a high risk of serious harm from COVID-19. *Id.* ¶¶ 90–93.  Mr. Gonzalez-Reyes' Original Petition understandably focused on the conditions of his confinement, but he also advanced the sweeping, categorical argument that any "civil detention during the COVID-19 pandemic amounts to punishment."  *Id.* ¶¶ 28–29.

The Original Petition described a number of facts that supported his claim in March of 2020—focusing on the specific conditions of his detention, from which he then sought release.  The Court describes some of those facts to provide context for his request.  Mr. Gonzalez-Reyes' Original Petition described the spread of COVID-19 in early 2020 in immigration detention centers, jails, and prisons, both around the country and in the New York area.  *Id.* ¶¶ 22, 37–38.  The petition argued that in the Orange County Jail, where Mr. Gonzalez-Reyes was detained, it would be "nearly

impossible to contain COVID-19," because of "the close proximity between people, rules and regulations that bar some basic disease prevention measures, and restrictions that prevent people from taking steps to protect themselves from infection, such as accessing hand sanitizer or gloves." *Id.* ¶ 25; *see also id.* ¶¶ 30, 43–45.  He also described how "conditions inside the Orange County Jail ha[d] deteriorated significantly, as detainees d[id] not have access to hand sanitizer or gloves and limited access to soap, there [wa]s rarely soap in the visitors' bathroom, and the facility d[id] not have adequate cleaning supplies.  Detainees use[d] the same objects and appliances (e.g., telephones, microwaves, and tables), but those objects [were] not cleaned or disinfected between uses, and detainees [were] not provided with disinfectant wipes."  *Id.* ¶ 51.

The Original Petition also described the conditions of detention generally at the outset of the COVID-19 pandemic.  For instance, the Original Petition referenced a February 2020 declaration submitted in another case in this District by Dr. Jaimie Meyer, an expert on infectious diseases in the context of jails and prisons. *Id.* ¶ 40.  Dr. Meyer noted that COVID-19 risk in detention was "significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."  *Id.*  Dr. Meyer asserted that at the time of her declaration, New York-area immigration detention centers were "dangerously under-equipped and ill-prepared to prevent and manage a COVID-19 outbreak, which would result in severe harm to detained individuals, jail and prison staff, and the broader community."  *Id.* ¶ 50.  Moreover, according to Dr. Meyer, in February 2020, New York-area immigration detention centers' past record on addressing individuals both with serious health needs and in need of emergency care showed that the facilities were not prepared to "identify, monitor, and treat a COVID-19 epidemic." *Id.*

The Original Petition also outlined Mr. Gonzalez-Reyes' underlying health issues, and explained that because of these underlying health issues, he was "particularly unsafe in the jail

environment." *Id.* ¶ 28.  The petition detailed how "deficient medical care" was a problem in the Orange County Jail even before the COVID-19 pandemic. *Id.* ¶¶ 46–47.  Mr. Gonzalez stated that "[a]s an individual with a long history of tobacco use and existing respiratory problems," he "is in one of the highest risk categories for severe complications and serious illness or death if he were to contract COVID-19." *Id.* ¶ 62.  He claimed that the administrators of the facility were deliberately indifferent to his medical needs.

In his Original Petition, Mr. Gonzalez-Reyes sought immediate release and an order that Respondents not re-detain him pending the culmination of his removal proceedings. *Id.* at 31 (Prayer for Relief ¶¶ 3, 4).  That same day, Mr. Gonzalez-Reyes filed an Application for an Order to Show Cause and a Motion for a Temporary Restraining Order and Preliminary Injunction.  Mot. for Order to Show Cause, Dkt. No. 5; *see also* Am. Pet. ¶¶ 63, 67.

### C.    Voluntary Release

The next day, on March 31, 2020, the Court held a hearing in response to Mr. Gonzalez-Reyes' Petition.  At the hearing, Respondents informed the Court that they had decided to grant Petitioner's request for discretionary release.  Am. Pet. ¶ 64; Order, Dkt. No. 8.  And the very next day, on April 1, 2020, ICE released Mr. Gonzalez-Reyes under a home-supervision program.  Am. Pet. ¶ 65; Rodriguez Decl. ¶ 10.

The continuing conditions of Mr. Gonzalez-Reyes' supervised release restrict his movements, and require that he check in periodically.[1]  But Mr. Gonzalez-Reyes is not challenging the conditions of his supervised release here.  They permit him to live at home under conditions of

---

[1] The terms of his conditional release require that Mr. Gonzalez-Reyes remain at home between 6 a.m. and 6 p.m. every Monday, wear and charge a GPS-enabled ankle bracelet, attend periodic in person or telephonic check-ins, and report for any hearing or interview.  Am. Pet. ¶ 65; Rodriguez Decl. ¶ 11.  He must also surrender for removal if so ordered, assist ICE in obtaining any necessary travel documents, and provide ICE with copies of written communications with embassies or consulates. *Id.*  Mr. Gonzalez-Reyes must refrain from violating the law, committing crimes, or associating with gang members or criminal associates. *Id.*  Mr. Gonzalez-Reyes cannot travel outside of New York state or more than 75 miles from his home. *Id.*

his own making.  The conditions of his release do not adversely affect his ability to seek treatment or care for any medical needs.  He states he "has been able to take steps to avoid contracting COVID-19" and "has also been able to seek medical care for his mental and physical health needs."  Am. Pet. ¶ 66.

ICE has provided reassurances to Mr. Gonzalez-Reyes that it is not planning to detain him in the near future, consistent with its voluntary decision to release him in the first place.  ICE has asserted in an affirmation that it has "no present intention to detain Mr. Gonzalez-Reyes, absent a violation of the terms of his conditional release."  Rodriguez Decl. ¶¶ 12, 14.  Moreover, ICE states it will give Mr. Gonzalez-Reyes at least 72 hours' notice for any future routine check-in.  *Id.* ¶ 13.

### D.    Amended Habeas Petition

After Mr. Gonzalez-Reyes was released from detention, the Court anticipated that the case would be dismissed.  But the parties engaged in discussions provoked by Mr. Gonzalez-Reyes' determination to obtain a commitment from ICE that he would not be detained again at any point while his immigration proceedings were continuing—the relief he seeks here.

The Court directed the parties to discuss their positions on the issues.  The parties initially presented dueling proposals regarding how best to proceed.  Petitioner's counsel proposed that the Court simply accept briefing on the Original Petition, notwithstanding the fact that it was predicated on a fact that had been clearly overtaken by events--namely, the fact that Mr. Gonzalez-Reyes was no longer detained.  Dkt. No. 19.  In the same letter, the Government proposed a motion schedule to brief a motion to dismiss the Original Petition as moot.  *Id.*

The Court held a conference on August 12, 2020 to discuss the path forward.  The Court inquired about the logic behind Mr. Gonzalez-Reyes' position that the parties brief the Original Petition given the clear change in circumstances.  Counsel for Mr. Gonzalez-Reyes sought leave to

file an amended petition, clarifying the nature of Mr. Gonzalez-Reyes's petition. The Court granted

that request and allowed Mr. Gonzalez-Reyes to file an amended petition. Dkt. Nos. 21, 23.

Mr. Gonzalez-Reyes filed his Amended Petition on August 26, 2020. *See* Am. Pet. The

Amended Petition no longer requests Mr. Gonzalez-Reyes' release—the principal request from the

Original Petition. In the Amended Petition, Mr. Gonzalez-Reyes asks that the Court "[e]njoin

Respondents from detaining Petitioner pending the culmination of removal proceedings against him,

including all administrative or judicial appeals." *Id.* at 50 (Prayer for Relief ¶ 2). Thus, from the

period of his brief detention in Orange County Jail, Mr. Gonzalez-Reyes seeks to wrest an order

from this Court that under no circumstances can he be detained at any time *during his immigration

proceedings.* Strikingly, while predicated on the existence of unconstitutional conditions of

confinement, the request is unbounded by time, or any conditions of confinement. Mr. Gonzalez-

Reyes argues that the Constitution requires that he be free from any further detention of any type, in

any place, at any time until a final decision in his immigration proceedings.

His fifty-plus page long petition leads up to two legal claims for relief. First, Mr. Gonzalez-

Reyes argues that detaining him violates his Due Process rights:

> Because of the conditions in the county jails that serve as immigration detention
> facilities, Mr. Gonzalez-Reyes is not able to take steps to protect himself in
> detention—such as social distancing, using hand sanitizer, or washing his hands
> regularly—and the government has not provided adequate protections. When
> COVID-19 spreads inside immigrant detention facilities, the already deplorable
> conditions in these facilities are exacerbated, and the ability to protect oneself
> becomes even more impossible. The government's failure to adequately protect Mr.
> Gonzalez-Reyes from these punitive conditions constitutes an egregious violation of
> Petitioner's due process rights.

*Id.* ¶¶ 105–106 (paragraph numbering omitted).

Second, he argues that anyone who detains him in the future will be demonstrating

deliberate indifference to his medical needs.

> Mr. Gonzalez-Reyes's chronic and underlying conditions place him at a heightened
> risk of contracting COVID-19 and suffering serious medical harm, or even death, as

a result.  Because Respondents are aware that failing to adequately protect Mr. Gonzalez-Reyes could have tragic results and have not taken necessary or appropriate precautions, and instead maintain a limitless ability to redetain him in constitutionally violative conditions, Respondents have acted with deliberate indifference to his serious medical needs in violation of the Due Process Clause.

*Id.* ¶¶ 109–110 (paragraph numbering omitted).[2]

Mr. Gonzalez-Reyes makes speculative assertions that conditions in all four New York ICE detention facilities will remain dangerous for medically vulnerable individuals "so long as the pandemic persists." *Id.* ¶ 47.  But, of course, Mr. Gonzalez-Reyes provides no facts regarding potential future conditions of detention in those or any other facilities into which Mr. Gonzalez-Reyes might be placed.  They will only be known in the future, which is the main problem with his petition.  Mr. Gonzalez-Reyes' petition ultimately rests on the existence of a series of hypothetical and speculative future conditions, which make it unripe.  But, for the sake of completeness, the Court summarizes the facts Mr. Gonzalez-Reyes provides in support of the Amended Petition below.

### 1.  Historical Facts Regarding Immigration Detention During COVID-19

In his Amended Petition, Mr. Gonzalez-Reyes repeats a number of the facts that he described in the Original Petition regarding his experience in the Orange County Jail, as well as conditions of immigration detention generally at the beginning of the COVID-19 pandemic and at the time he filed the Amended Petition.

---

[2] While the Court does not reach the merits of Mr. Gonzalez-Reyes' claims, the Court notes that this claim is somewhat extraordinary given the nature of proof required to demonstrate deliberate indifference to medical needs, as described below.  Respondents released Mr. Gonzalez-Reyes; his claim is that some unknown official is currently acting in deliberate indifference to his medical needs even though he has been released and is successfully caring for himself.  For Mr. Gonzalez-Reyes, the threat of detention in any context constitutes deliberate indifference, no matter the quality of health care that he receives in prison.  It is unclear that this position can be sustained under a non-frivolous construction of existing law.

### i. Conditions Mr. Gonzalez-Reyes Experienced at the Orange County Jail

In his Amended Petition, Mr. Gonzalez-Reyes reiterates the facts he provided in his Original Petition and describes in additional detail the conditions he experienced during his detention at the Orange County Jail that were alleged to have been unconstitutionally punitive at the time. Mr. Gonzalez-Reyes describes that, then, "neither the jail administrators nor the officers ever said anything to us about protecting ourselves from COVID-19." Decl. of Constantino Gonzalez-Reyes ("Gonzalez-Reyes Decl."), Dkt. No. 31-1, ¶ 9. Social distancing was not enforced and would have been impossible. *Id.* ¶ 10. There were 50 or 55 people in his unit, and they all shared one common space. *Id.* At most, he asserts, prisoners could maintain a distance of 1.5 to 2 feet from each other. *Id.* Everyone used the same bathrooms, telephones, chairs, and tables, and detainees "had no way to wipe down surfaces or disinfect areas after others had used it during our free time." *Id.* ¶ 11. According to Mr. Gonzalez-Reyes, detainees "did not have access to disinfectant wipes, bleach, or other supplies to protect ourselves from the virus." *Id.* ¶ 13. He also states that detainees' temperatures were not taken. *Id.* ¶ 20.

Mr. Gonzalez-Reyes also describes how Respondents failed to meet his medical needs while he was incarcerated, and argues that those failures rise to the level of unconstitutional deliberate indifference to his medical needs. He states that he was never taken to see a physician when he reported issues with his breathing to a nurse at the Orange County Jail. *Id.* ¶ 18. According to a letter provided in support of his petition, that response fell below the applicable "standard of care provided in the community." August 24, 2020 Letter from Dr. Puttmann-Kostecka and Dr. Bazan ("Physician Ltr."), Dkt No. 31-2 at 3.

### ii. Conditions in Civil Detention Generally

Mr. Gonzalez-Reyes also adds more factual detail to support the conclusion that immigration detention of any type during the existence of COVID-19 is unconstitutional. But,

again, most of the facts that Mr. Gonzalez-Reyes provides in support of his Amended Petition describe conditions of detention at the beginning of the pandemic. For instance, Mr. Gonzalez-Reyes also cites to an April 2020 declaration by Dr. Gregg Gonsalves, an epidemiologist at Yale University who reviewed declarations from the wardens of all four jails where ICE's New York Field Office detains people. Am. Pet. ¶ 35, n. 42. Dr. Gonsalves concludes that, as of April 2020, "ICE and the four facilities remain unprepared to address the current COVID-19 pandemic," and the conditions at Orange, Bergen, Hudson and Essex County Jails pose a question of "life or death . . . for individuals with preexisting conditions." *Id.* ¶ 47.

Mr. Gonzalez-Reyes does cite some more current (as of the filing of the Amended Petition) statistics regarding the prevalence of COVID-19 infections among both staff and detainees at the four New York-area facilities utilized for immigration detention. For example, he asserts, that as of August 3, 2020, 17 ICE detainees, 27 county inmates, and 103 staff at the Hudson County Jail in Kearney, NJ had tested positive, and five employees had died of COVID-19. *Id.* ¶ 32, n. 37, 38. As of June 17, 2020, Orange County Jail, where Mr. Gonzalez-Reyes was detained, reported that eight members of its staff have tested positive for COVID-19. *Id.* ¶ 33, n. 41. And as of July 2020, Bergen and Essex County Jails had also reported positive cases. *Id.* ¶ 32, n. 39. Mr. Gonzalez-Reyes claims that the high positivity rate in detention centers was partly caused by transfers, which ICE continues to do. *Id.* ¶ 30, n. 28. Mr. Gonzalez-Reyes also asserts that county jails that house ICE detainees had been loosening their protective measures, including by increasing the number of detainees in common areas and introducing transfers from other jails and the community. *Id.* ¶ 38.

He also describes ICE detention conditions more recently during the pandemic generally. For instance, Mr. Gonzalez-Reyes points to a study documenting that as of August 21, 2020, there were 102,494 COVID-19 infections and 889 deaths of detainees in prisons. *Id.* ¶ 27, n. 21 (citing *A State-by-State Look at Coronavirus in Prisons*, The Marshall Project (updated August 21, 2020). He

points to a study showing that COVID-19 is infecting people who are incarcerated in the U.S. at a rate more than five times higher than the overall U.S. population, and that when adjusted for age, those who were infected while incarcerated were over three times more likely to die from COVID-19 than the general population. *Id.* at ¶ 28, n. 26 (citing a July 8, 2020 news article about analysis by the UCLA School of Law's COVID-19 Behind Bars Data Project). And he points to a particularly egregious situation that happened over the summer when an ICE detention facility in Virginia experienced an outbreak that infected 90% of detainees after detainees were transferred there from Arizona and Texas. *Id.* ¶ 30.

### 2. Mr. Gonzalez-Reyes' Assertions Concerning His Health

Mr. Gonzalez-Reyes' Amended Petition also describes his co-morbidities which, he asserts, put him at higher risk for adverse health outcomes in the event that he were to catch COVID-19. There are several. Mr. Gonzalez-Reyes is overweight. Physician Ltr. at 2–3. He has been a heavy smoker for most of his life, although in the past few years he has cut back his cigarette use to a few times a week. Gonzalez-Reyes Decl. ¶ 5. He has recurrent issues with chest pain and breathing. *Id.* ¶ 7. His chest often feels tight and he is often short of breath when he exerts himself. *Id.* He has high blood pressure. Physician Ltr. at 2. Mr. Gonzalez-Reyes states that he often feels anxious that ICE will re-detain him. Gonzalez-Reyes Decl. ¶ 27.

Dr. Mary Puttmann-Kostecka and Dr. Laurie E. Bazan, physicians who treat COVID-19 patients and who "have knowledge regarding the epidemiology of the pandemic and its ability to spread rapidly through institutional settings" have reviewed Mr. Gonzalez-Reyes' medical records. Physician Ltr. at 1. They believe that Mr. Gonzalez-Reyes is "at risk for severe illness and even death if he were to contract the virus COVID-19." *Id.* They note that his elevated blood pressure meets hypertension criteria. *Id.* This, along with his history of chest pains, his history of tobacco use, and his elevated body mass index all put him at higher risk of disease beyond the baseline risk

for contagion to any person detained in a crowded environment.  *Id.*  Drs. Puttmann-Kosteck and Bazan state that, "[a]s medical professionals we . . . are concerned that close-quarters group living would put him at significant risk for developing COVID-19 infection."  *Id.* at 3.

## II.   LEGAL STANDARD

### A.   Article III Standing & Ripeness

"Article III restricts federal courts to the resolution of cases and controversies: . . .  That restriction requires that the party invoking federal jurisdiction have *standing*—the personal interest that must exist at the commencement of the litigation."  *Carter v. HealthPort Techs.,* LLC, 822 F.3d 47, 55 (2d Cir. 2016) (emphasis in original) (quoting *Davis v. Federal Election Commission*, 554 U.S. 724, 732 (2008)).  Standing under Article III of the U.S. Constitution "consists of three elements:  the individual initiating the suit must have (1) suffered and injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision."  *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting *Spokeo Inc. v. Robbins*, 136 S.Ct. 1540, 1547 (2016)).  A petitioner seeking injunctive relief must also prove that the identified injury in fact presents a "real and immediate threat of future injury."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).

"Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical."  *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n. 8 (2d Cir. 2008) (internal quotations and citations omitted).  "Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing."  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).  "[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'"  *Id.*  A case is "ripe" only when it is "not dependent on contingent future events that may not occur

as anticipated, or indeed may not occur at all." *Trump v. New York*, __S. Ct.__, No. 20-366, 2020 WL 7408998 (Dec. 18, 2020) (slip op.) (internal quotations and citations omitted).

The purpose behind the doctrine of constitutional ripeness is to "prevent[ ] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (quoting *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008)). In other words, a claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Walsh*, 714 F.3d at 687 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). The ripeness doctrine requires courts to limit their jurisdiction to causes of action that "present a real, substantial controversy, not a mere hypothetical question." *Walsh*, 714 F.3d at 687 (internal quotation marks omitted). Moreover, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Id.* at 689.

## B.      Rule 12(b)(1)

"A district court properly dismisses a claim under Rule 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the [petitioner] lacks constitutional standing to bring the action." *Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotations and citations omitted). The petitioner "bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue." *Id.* at 417 (quotation and alteration omitted). Each element of standing "must be supported in the same way as any other matter on which the [petitioner] bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: facial motions and fact-based motions. "When the Rule 12(b)(1) motion is facial, *i.e.*, based on solely on the allegations of the complaint . . . [t]he task of the district court is to determine whether the pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter*, 822 F.3d at 55 (internal quotations and citations omitted). The Court must "accept[] as true all material factual allegations of the complaint, and draw[] all reasonable inferences in favor of the plaintiff. *Id.* at 57 (internal quotations and citations omitted). "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [pleadings]." *Id.* On such a motion, "the court may also rely on evidence outside the complaint." *Hellas*, 790 F.3d at 417 (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In the context of a fact-based 12(b)(1) motion, the Court no long accepts as true all of the facts pleaded in the complaint. "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (internal quotations and citations omitted).

## III.   DISCUSSION

The issues raised in the Amended Petition are clearly unripe for judicial review. The petition asks for the Court to evaluate future conditions of detention at an indeterminate time in the future, in an indeterminate facility. The Court cannot conclude that there are no future circumstances in which Mr. Gonzalez-Reyes can be constitutionally detained while his immigration matter is proceeding. Mr. Gonzalez-Reyes' Petition asks the Court to engage in speculative inquiries about the hypothetical conditions of some hypothetical future detention. Even accepting as true all of the

factual allegations in the Amended Petition and drawing all reasonable inferences in favor of the Petitioner, the case must be dismissed because it is unripe.[3]

A.       Legal Standard for Establishing Unconstitutional Conditions of Detention

As described above, there are two basic grounds for Mr. Gonzalez-Reyes' argument that the prospect of his detention at any point during his ongoing immigration proceedings will violate the Constitution.  He argues that the conditions of any confinement in which he may find himself will be so bad that they will violate the guarantees of the United States Constitution.  And he argues that the prison personnel will, in all such circumstances, act in deliberate indifference to his medical needs, in violation of the Constitution.  As flagged above, Mr. Gonzalez-Reyes seems to believe that the government is indifferent to his medical needs even when he is at liberty.  For context, the Court provides the standard that he must meet in order to prove either claim.

"[W]hen the State . . . so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).  To determine whether a governmental act is punitive in nature, courts may examine numerous factors, including whether "the sanction involves an affirmative disability or restraint," "whether it has historically been regarded as a punishment," and "whether it appears excessive in relation to the alternative purpose."  *Bell v. Wolfish*, 441 U.S. 520, 537–38 (1979).  When

---

[3] Respondents also raise strong arguments that Mr. Gonzalez-Reyes' release from immigration detention moots this action.  *See, e.g., Troy v. Barr*, ___ F. App'x ____, No. 19-3547, 2020 WL 5638779, at *1 (2d Cir. Sept. 22, 2020) (summary order) (holding that "[the petitioner's] release from detention mooted his requests for release and for a declaration that his ongoing detention was unlawful."); *Chocho v. Shanahan*, 308 F. Supp. 3d 772, 774 (S.D.N.Y. 2018) (holding that petition was moot after petitioner was released from detention and granted a one-year administrative stay of removal); *Jackson v. Holder*, 893 F. Supp. 2d 629, 631 (S.D.N.Y. 2012) ("When a habeas petitioner challenges solely his detention, but is subsequently released prior to removal, courts routinely dismiss the petition as moot, finding no persisting case in controversy.").  However, the Court need not decide whether this case is moot because, as the Court will elaborate below, Mr. Gonzalez-Reyes' claims regarding the constitutionality of future conditions of detention are clearly not ripe at this time.

assessing whether restrictions on civil detainees comport with substantive due process, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.*

To the extent the government has a legitimate interest in using detention to enforce immigration laws, such interests "[do] not relieve officials from the requirements of due process or permit them to institute restrictive measures on pretrial detainees that are not reasonably related to legitimate governmental purposes." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 56–57 (2d Cir. 2017).  "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 55.

Detainees can establish a due process violation for deliberate indifference to medical needs by showing that a government official "knew, or should have known" of a condition that "posed an excessive risk to health," and failed to take appropriate action.  *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019).  When considering whether a condition amounts to a serious medical need or poses an excessive risk to health, courts consider whether it is "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (listing factors that indicate a serious medical need to include "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain").

### B.  Petitioner's Claims Regarding Future Conditions of Detention Are Not Ripe

Mr. Gonzalez-Reyes seeks to enjoin the possibility of a future detention at some undetermined facility, under unknown conditions with respect to the COVID-19 pandemic.  But

Mr. Gonzalez-Reyes' claims are not ripe because in order to evaluate his claims, the Court is forced to engage in speculation and the analysis of hypothetical scenarios that may never come to pass.

ICE has affirmed that it has no plans to detain Mr. Gonzalez-Reyes, absent a violation of his conditions of release. It has not taken steps to detain him in the 8 plus months since it released him. Mr. Gonzalez-Reyes provides a detailed recitation about the facts that he encountered in the Orange County Jail during his brief period of detention there in March. But the Court is not evaluating now whether those past conditions of detention violated his rights—he was released. Instead, the Court is being asked to order that under no circumstances in the future may he be detained for so long as his immigration proceedings are ongoing. But in order to reach that conclusion, the Court would have to engage in a hypothetical world building exercise, rather than evaluating concrete facts. Just a few examples should help illustrate the many issues with Mr. Gonzalez-Reyes' request.

First, is time. Mr. Gonzalez-Reyes asks the Court to conclude that it will violate the Constitution for him to be detained at any time prior to the completion of his immigration proceedings. But all of his arguments are premised on the ongoing effect of the COVID-19 pandemic. So, to grant Mr. Gonzalez-Reyes' request, the Court would have to hypothesize that his immigration proceedings will not be completed before the COVID-19 pandemic has abated. Now, in December 2020, the Pfizer and Moderna vaccines have already begun to be administered to a first group of deserving recipients, and in some estimates, vaccination will be widely available throughout the United States by the summer of 2021. *See, e.g.,* Hillary Bruek and Aria Bendix, *When can I get a coronavirus vaccine?*, Business Insider (Dec. 21, 2020), www.businessinsider.com/when-can-i-get-a-coronavirus-vaccine-timeline-2020-11 (last visited Dec. 28, 2020). Mr. Gonzalez-Reyes asks the Court to rule that his detention will be unconstitutional even if he is detained at a time in the future when a vaccine for the disease may be widely available.

The Court cannot solve for this issue by limiting Mr. Gonzalez-Reyes' sweeping request that he not be detained while his immigration proceedings to a requirement that he not be detained during the pandemic. Because even that leads the Court to engage in speculation regarding how best to define the end of the pandemic: Is it when an effective vaccine is available to people who are incarcerated? When an effective vaccine is available to all people in the United States who want one? If so, what is an effective vaccine? Is it when the country has achieved herd immunity, or when COVID-19 has been largely eliminated from the human population like smallpox? Rather than dealing with concrete facts, Mr. Gonzalez-Reyes invites the Court to rule on the basis of such hypothetical questions. And all of this assumes that he is detained again at all. ICE retains the capacity to do so, but they have provided assurances that they do not intend to do so unless Mr. Gonzalez-Reyes violates the terms of his release.

Second, is place. Mr. Gonzalez-Reyes' Amended Petition rests principally on the conditions in effect at the Orange County Jail where he was incarcerated in early 2020. He also provides information regarding the conditions in early 2020 at other facilities frequently used by ICE at that time in the New York City area. But if ICE picks Mr. Gonzalez-Reyes up again, they are not obligated to place him in Orange County Jail, or in any of the other three facilities that are the focus of his Amended Petition. They could place him anywhere. The Court cannot assume that he will be placed in the same facility as before. So to grant Mr. Gonzalez-Reyes his requested relief, he asks that the Court hypothesize that he is placed in the same institution as in March.

Third, is manner. Mr. Gonzalez-Reyes asks the Court to hypothesize that the conditions in any future facility will be the same as that in Orange County Jail, and that the staff in any facility will callously disregard his medical needs. This hypothetical is simply counter-factual. Mr. Gonzalez-Reyes' own submissions assert that conditions have changed in some facilities over time. Mr. Gonzalez-Reyes asks the Court to predicate its decision on the hypothetical that the conditions in

any facility in which he is detained will inevitably be the same or worse than those that he experienced in the Orange County Jail in March of 2020.  And, in any facility, he asks the Court to assume, the staff will be indifferent to his medical needs—doctors and nurses will provide care below the relevant standard of care.

That conditions in immigration detention have changed—and often for the better—is reflected in the development of the case law in this arena.  Last spring, around the time that Mr. Gonzalez-Reyes filed his Original Petition, courts in this District found conditions of detention to be unconstitutional as to medically vulnerable detainees like Mr. Gonzalez-Reyes, and ordered release of immigrant detainees from ICE custody due to health risks.  *See, e.g.*, *Basank v. Decker*, 449 F. Supp. 3d 205, 215 (S.D.N.Y. 2020); *Coronel v. Decker*, 449 F. Supp. 3d 274, 285 (S.D.N.Y. 2020); *Ferreyra v. Decker*, at No. 20-cv-3170 (AT), 2020 WL 1989417, at *8–11 (S.D.N.Y. Apr. 27, 2020); *Cristian A.R. v. Decker*, No. 20-cv-3600 (MCA), 2020 WL 2092616, at *3 (D.N.J. Apr. 12, 2020); *Rasel v. Barr*, No. 19-1433, Dkt No. 127 (2d Cir. June 25, 2020)).

But more recently, a number of courts in this District have rejected claims regarding the conditions of confinement at these facilities based on the practices and precautions now taken by ICE and the facilities.  *See, e.g.*, *Roman v. Decker*, No. 20 Civ. 3752 (JGK), 2020 WL 4273823, at *5–6 (S.D.N.Y. July 24, 2020) (denying COVID-19 claim, even though petitioner may be in high-risk category according to CDC guidelines, due to measures taken at OCJ) (collecting cases); *Black v. Decker*, No. 20 Civ. 3055 (LGS), 2020 WL 4260994, at *7 (S.D.N.Y. July 23, 2020) ("Other courts in this District have found [Orange County Jail's] protocols sufficient to show that the facility is not acting with deliberate indifference in its response to the COVID-19 pandemic, and this Court agrees."); *Pacheco Benavente v. Decker*, No. 20 Civ. 2968 (GBD), 2020 WL 4195020, at *4–5 (S.D.N.Y. July 21, 2020) (denying petitioner's motion for a preliminary injunction and TRO, holding that petitioner failed to meet his burden on his deliberate indifference claim regarding OCJ).

These cases illustrate the hopefully uncontroversial point that circumstances change over time—and, in the view of at least these few cited courts—in a positive way.  Mr. Gonzalez-Reyes' application asks the Court to freeze time in March of 2020 and to grant his requested relief assuming that conditions will be the same or worse at some indeterminate point in the future.  Mr. Gonzalez-Reyes asks not only that the Court hypothesize and speculate, but that its hypotheticals run only in one direction—assuming a set of conditions that will always be at least as bad as those he experienced in March 2020.

To make a determination regarding whether conditions of detention are unconstitutionally punitive, or if officials have acted deliberate indifference to a detainees' medical needs, the Court must evaluate conditions on the ground.  The Court simply cannot decide "whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose," *Bell*, 441 U.S. at 537–38, without knowing where, when, and under what circumstances Mr. Gonzalez-Reyes would be detained.  And the Court also cannot determine whether a hypothetical government official detaining Mr. Gonzalez-Reyes at a hypothetical facility at a hypothetical future time "knew, or should have known" of a condition that "posed an excessive risk to health," and failed to take appropriate action.  *See Darnell*, 849 F.3d 17at 35; *Charles*, 925 F.3d at 87.  The Court does not question Mr. Gonzalez-Reyes' description of the quality of care that he previously received, but whether a future official fails to take action in response to Mr. Gonzalez-Reyes' medical condition cannot be assessed until she acts, or fails to do so.

Ultimately, Mr. Gonzalez-Reyes' claims rest on the conditions of his future hypothetical detention.  Claims resting upon such contingent events are not ripe and do not satisfy Article III's requirements.  *See Walsh*, 714 F.3d at 687; *see also Courts v. Coombe*, No. 95 Civ. 2350 (DC), 1996 WL 312357, at *2 (S.D.N.Y. June 11, 1996) ("The mere possibility that [the petitioner] may be returned to [his prior detention facility] at some point in the future does not present a sufficient case or

controversy that the Court can presently adjudicate."); *Armstrong v. Ward*, 529 F.2d 1132, 1135–36 (2d Cir. 1976) ("[W]hile there is always the possibility . . . that the State will change its mind [and transfer the petitioners back to the facility they object to,] 'such speculative contingencies afford no basis for our passing on the substantive issues.'") (quoting *Hall v. Beals*, 396 U.S. 45, 49 (1969)). Because the Court cannot know—and therefore cannot evaluate—the conditions of future detention at an unknown time, in an unknown place, and in an unknown manner, this case is not ripe.

Petitioner argues that the ripeness doctrine does not apply because "Mr. Gonzalez-Reyes' claims are not future, contingent events." Opp'n, Dkt. No. 38 at 15. But this argument makes mincemeat of the ripeness doctrine--a claim is not ripe merely because it has been presented to a court. Mr. Gonzalez-Reyes also argues that "his redetention is not speculative," because the government detained him once and may do so in the future. *Id.* at 16. But Petitioner is simply wrong in this context. As discussed above, whether the conditions of Mr. Gonzalez-Reyes' future detention violate the Constitution will require an assessment of the conditions in which he finds himself. The Petition requires the Court to speculate as to what those conditions will be (if, indeed, he is ever detained again).

And the cases to which Petitioner cites to in support of his argument do not support his position. They are distinguishable in many ways. None of the courts confronted a sweeping demand akin to that of Mr. Gonzalez-Reyes—asking for a permanent bar on his detention for so long as his immigration proceedings are pending. In three of the cases cited by Petitioner, the court had ordered the provisional release of the detainee on bond—not a voluntary release by ICE— pending resolution of the habeas petition. The provisional nature of that release reasonably required the Court to adjudicate the underlying petition notwithstanding the fact that the petitioner had been released. *See, e.g.*, *Ruderman v. Kolitwenzew*, No. 20-cv-2082, 2020 WL 2449758, at *6 (C.D. Ill. May 12,

2020) (petitioner was released on bond pending the court's final ruling on the petition); *Favi v. Kolitwenzew*, No. 20-cv-2087, 2020 WL 2114566, at *5 (C.D. Ill. May 4, 2020) (same); *Meza v. Bonnar*, No. 18-cv-02708 (BLF), 2018 WL 2554572, at* 2 (N.D. Cal. June 14, 2018) (enjoining additional detention of petitioner pending disposition of her petition for writ of habeas corpus). And not all of the cases cited by Petitioner involve habeas claims involving conditions of confinement. *See Ortega v. Bonnar*. 415 F. Supp. 3d 963 (N.D. Cal. 2019) (evaluating due process challenge to DHS's ability to re-arrest petitioner without a bond hearing before an immigration judge).

Mr. Gonzalez-Reyes' argument regarding hardship to him if the Court does not resolve his petition now is misplaced for at least two reasons. First, Mr. Gonzalez-Reyes conflates the standard for prudential ripeness with constitutional ripeness. Quoting the Second Circuit's decision in *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003), Petitioner states correctly that "[c]ourts assessing whether a claim is ripe look to '(1) whether an issue is for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld.'" Opp'n at 16. But that is the test articulated by the Circuit for prudential ripeness, not constitutional ripeness. The Second Circuit included a useful primer regarding the differences between the doctrines in *Simmonds* itself. *Id.* at 356–57. ("'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction. Both are concerned with whether a case has been brought prematurely, but they protect against prematureness in different ways and for different reasons. The first of these ripeness requirements has as its source the Case or Controversy Clause of Article III of the Constitution, and hence goes, in a fundamental way, to the existence of jurisdiction. The second is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it.") This case is not ripe in the constitutional sense because "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296,

300 (1998) (internal quotation marks and citations omitted).  So, an analysis of hardship is not required here.

Moreover, the Court does not believe that the hardship articulated by Mr. Gonzalez-Reyes here would weigh against deferring a ruling on his petition.  Here's how Mr. Gonzalez-Reyes describes his current hardship, while on home release, living with his fiancé in Brooklyn:  "Even out of detention, Mr. Gonzalez-Reyes faces hardship because Respondents will not limit their own ability to detain him at a moment's notice even though he has been abiding by their conditions of release since March.  In doing so, he would be separated him from his family and his home where he is able to monitor his health and take precautions—as a result he is suffering anxiety."  Opp'n at 17 n. 11.  Mr. Gonzalez-Reyes is anxious because he could be detained, but anxiety as a result of a fear of future detention falls well short of a violation of his Constitutional rights, and does not raise to the level of the kind of hardship that would lead the Court to engage in the kind of speculative exercise that Mr. Gonzalez-Reyes invites here.  In the event that Mr. Gonzalez-Reyes is detained in the future, he will have the opportunity to file a new habeas petition based on the actual circumstances of his future detention.  *See United States v. Jackson*, 820 Fed. Appx. 73, 75 (2d Cir. Sept. 9, 2020) (declining to reach defendant's unripe challenge and noting that "[s]hould the contingencies described above in fact materialize, Jackson may challenge the degree of discretion afforded to the probation officer in the district court at the appropriate time").

Ultimately, Mr. Gonzalez-Reyes' claims regarding the constitutional deficiency of potential future detention are speculative—based on uncertain events and conditions that may never come to pass.  As a result, this matter no longer presents a case or controversy justiciable under Article III.

**IV.     CONCLUSION**

For the reasons stated above, Respondents' motion to dismiss Petitioner's habeas petition for lack of subject matter jurisdiction is GRANTED.  Petitioner's Amended Petition is dismissed without prejudice.

The Clerk of Court is directed to terminate all pending motions and to close this case.

SO ORDERED.

Dated:  December 31, 2020

_____
GREGORY H. WOODS
United States District Judge